651 So.2d 435 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Clifton Cozer GREEN, Defendant-Appellant.
No. CR94-986.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
*436 Don M. Burkett, Many, for State of Louisiana.
Joseph David Toups Jr., Mansfield, for Clifton Cozer Green.
Before YELVERTON, THIBODEAUX and DECUIR, JJ.
THIBODEAUX, Judge.
The defendant, Clifton Cozer Green, was convicted of first degree murder and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.
He appeals and alleges sixteen assignments of error, ten of which were abandoned. We affirm his conviction and sentence.

FACTS
On August 9, 1993, at approximately 10:00 p.m., seven young men (five adults, two juveniles) in an automobile drove slowly through the parking lot of the Apollo Apartments in the town of Many, Louisiana. As the car got about halfway through the parking lot, the defendant, Clifton Cozer Green, leaned out of a passenger-side window and fired six (6) shots from a .38-caliber revolver. There were several person in the lot at the time, and they scattered, running to avoid the *437 shots. After the car left the scene, bystanders discovered the victim, Chris Joseph, had been struck with a round in the back of the head. The victim died of his injury, and the defendant was subsequently tried for first degree murder.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
As the defendant has consolidated his argument as to these assignments, they will be analyzed together. Generally, the defendant argues that the jury was improperly constituted, as the selection of the jury venire made no provision for race, and that the trial judge improperly excused potential jurors on the basis of race. The defendant is of African-American descent. Originally, 25 of 150 veniremen were black; after excuses for hardship were allowed by the trial court, there were four (4) black persons remaining for voir dire.
The defendant's argument as to the composition of the original jury venire is unclear; he seems to argue that the selection process, which he admits was random, should have a method of indicating race. In effect, this is an argument that the selection process was too random. The legal requirements for the selection of a petit jury venire in Louisiana are clear. As the defendant acknowledges, petit jury venire selection is governed by La.Code Crim.P. art. 416, which provides for random selection by allowing a jury commission to draw by lot name slips or by lot through a computer.
As State v. Davis, 626 So.2d 800, 803-804 (La.App. 2d Cir.1993), writ denied, 632 So.2d 762 (1994) indicated, mere underrepresentation is insufficient. One has to additionally show that voter rolls suppressed Black representation. As in Davis, the defendant in this case failed to show the impropriety in the composition of the jury venire by demonstrating systematic racial exclusion.
Having argued that the venire selection did not pay enough attention to race, the defendant argues the process by which the trial judge excused jurors was tainted by race-based exclusions.
A defendant will not be heard to complain unless he can show that the exclusion of Black persons from the venire was not a nondiscriminatory, random process. State v. Bourque, 622 So.2d 198 (La.1993); State v. Monk, 315 So.2d 727 (La.1975). The defendant must show both underrepresentation on the venire, and some systematic act tending toward race-based exclusion of potential jurors. The defendant complains that because hardship excuses are a matter for the trial court to decide in camera, there is no record of the excuses. Thus, the defendant has no way of showing whether the excuses for hardship were systematic.
Hardship exclusions are governed by La. Code Crim.P. art. 783(B):
B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court.
The trial judge gave a detailed explanation of the process she uses in excusing jurors. She explained that persons who are medically unable to serve, or who cannot read, write or speak the English language, or do not possess the qualifications of a juror are released. Those are not considered excuses. She only excuses a potential juror for hardship reasons. Furthermore, the questionnaire which is sent to a potential juror has no racial designation.
The trial court ruling is correct. A trial judge is vested with broad discretion in excusing prospective jurors for undue hardship. That discretion will not be disturbed absent fraud or collusion resulting in prejudice to an accused. State v. Brown, 414 So.2d 726 (La.1982). The record is devoid of any such allegations.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant alleges that the trial court erred in denying four (4) of the defendant's challenges for cause. The defendant contends his challenge as to Rose Field was not recorded. However, *438 the record reflects Ms. Field was excused due to a peremptory challenge by the state, not by the defendant. Thus, the defendant has shown no prejudice due to the trial court's possible error in failing to grant a challenge for cause.
The defendant complains that juror David Rigsby, a divorced father, had problems arranging child care during the trial. Barbara Bailey's first cousin had been murdered approximately one (1) month prior to this trial, and Lurline Bonds had difficulty reading small print.
These issues were discussed during the jury selection process, where the trial judge found that each of these three jurors was capable of deliberating in a fair and impartial manner.
The trial court's denial of the defendant's challenges for cause against potential jurors Bailey, Bonds, and Rigsby is governed by a well-established set of principles. La.Code Crim.P. art. 797 permits the removal of a juror for cause on the basis of the juror's impartiality. And as this circuit has stated:
A defendant may only complain about a trial court's denial of his challenge for cause if he has exhausted all his peremptory challenges. State v. Smith, 430 So.2d 31 (La.1983); State v. Heard, 408 So.2d 1247 (La.1982). In this case, defendant exhausted all of his peremptory challenges and can therefore raise the issue of an erroneous denial of his challenge for cause. The trial judge has wide discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Gintz, 438 So.2d 1230 (La.App. 3d Cir. 1983).
A charge of bias may be removed if a witness is rehabilitated. State v. Williams, 447 So.2d 495 (La.App. 3d Cir.), writ denied, 450 So.2d 969 (La.1984). A prospective juror can be rehabilitated if the court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983).
The mere statement by a juror that he could be fair and impartial is not binding on the trial court. State v. Shelton, 377 So.2d 96 (La.1979). The trial judge witnessed the prospective jurors first hand, and he was in the best position to determine their veracity. The trial judge did not abuse his wide discretion in finding that this juror was impartial, and that his relationship with the victim would not influence him in arriving at a fair verdict.
State v. Gibson, 505 So.2d 237, 240-241, (La. App. 3d Cir.), writ denied, 508 So.2d 66 (1987).
The defendant used all of his peremptory challenges in the course of jury selection, as he complains. However, the trial court's denials of the defense's challenges for cause against Bailey, Bonds, and Rigsby were correct. Bailey and Bonds were fully rehabilitated; Rigsby clearly stated that although finding child care would be difficult, he would have no problems concentrating on the trial once the child care matter was settled.
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment, the defendant claims that an emotional, crying outburst by the victim's mother resulted in prejudice to his case.
La.Code Crim.P. art. 775 states, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial.
State v. Worthen, 550 So.2d 399 (La.App. 3d Cir.1989) observed that mistrial is a drastic remedy and a trial judge has broad discretion in determining whether conduct is so prejudicial so as to deprive an accused of a fair trial. Although there is no recorded admonition by the judge, she did point out during the jury charge that sympathy and passion were not to affect the jury's deliberations.
This assignment of error is without merit.

*439 ASSIGNMENT OF ERROR NO. 8

In this assignment, the defendant alleges the trial court erred in denying him the opportunity to allow a police officer to testify about gunpowder residue tests. As there was no such test in this case, the defense wanted an expert to testify to the general acceptance and availability of such tests. The state objected, and the trial judge sustained on relevancy grounds. The pertinent part of the colloquy between the trial judge and the defense counsel follows:
THE COURT: I have read 401. Mr. Brown, it is my understanding that what you intend to do is put an expert on the stand to basically repeat to the jury the information that you solicited from the State's ballistic expert on cross examination and then have him testify as to how he thinks the investigation or the evidence should or should not have been conducted and what he would have done differently, is that correct?
MR. BROWN: Yes, ma'am, by in large that is correct. I am not sure the expert's testimony yesterday established the availability of it, although I think he did acknowledge the Lab in Baton Rouge and the one in Jackson, Mississippi. But as I understand it, it is not fair game for me to fault them for not using a test which is universally accepted. I can do so if it is one that is scientifically recognized and accepted and in common use. That's essentiallythis is a policeman, as opposed to a Lab expert, he is simply going to testify to its availability and its common acceptance and use as an investigative tool. That really is the purpose in bringing him on.
THE COURT: Under that set of circumstances you just outlined to me, basically what you are wanting to do is have someone come into the courtroom and speculate on what may or may not have resulted if this would or would not have been done, and I have reviewed 401 and 402 and some of the cases that are attendant thereto and under the set of circumstances you just described I agree with Mr. Burkett that that is inadmissible and would so rule.
MR. BROWN: We would object to the Court's ruling.
Defendant's argument on this issue consists of a single paragraph which ends by asserting that the testimony in question "would have had some value in the proceedings." This rather lukewarm argument does little to challenge the well-settled rule that determinations as to relevance of testimony are within the sound discretion of the trial court. The absence of a specific type of evidence is not directly relevant to the ultimate issue of the alleged guilt of the defendant. The state decides how to make out its case,[1] and many factors may go into such decisions. The lack of a residue test was relevant to the overall strength or weakness of the state's case, and the fact of its absence was already before the jury.
This assignment is without merit.

ASSIGNMENTS OF ERROR NO. 9
The defendant argues the trial court erred in its description of reasonable doubt in its charge to the jury.
The court's definition of reasonable doubt was as follows:
At this point, I will charge you as to what constitutes a reasonable doubt. A reasonable doubt is not a mere possible doubt, it should be an actual doubt. It is such a doubt as a reasonable person could have. It is a sensible doubt such as one could give a reason for. It is insufficient to convict if from all of the proof in the case you honestly believe that the State has proved the accused to be guilty beyond a reasonable doubt.
The defendant's brief points out that no juror should have to give a reason for his or her vote. Of course, none do. The trial judge was merely trying to present jurors with a working definition of the legal term "reasonable doubt."
*440 Citing Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) and Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the defendant points out that federal constitutional standards have been set for jury charges. Cage held that the use of words such as "substantial" and "grave" in a jury charge suggested a higher degree of doubt than the actual reasonable doubt standard. Sullivan made clear that a Cage error mandates reversal.
The charge in the current case meets the standard set out in Victor v. Nebraska, ___ U.S. ___, ___ - ___, 114 S.Ct. 1239, 1241-1242, 127 L.Ed.2d 583 (1994). According to that case, decided after Sullivan, the proper inquiry is whether there is a reasonable likelihood that the jury unconstitutionally applied the instruction it received. ___ U.S. at ___, 114 S.Ct. at 1241, citing Estelle v. McGuire, 502 U.S. 62, 71, and n. 4, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991).
The Victor court held that the phrases "substantial doubt" and "moral certainty" did not render the jury charge in that case unconstitutional because the charge as a whole gave the jury a sufficient definition to apply the correct reasonable doubt standard. Id. at ___, 114 S.Ct. at 1242. A more expanded rendition of the charge shows that as a whole, it was sound:
The State, however, is not called upon to prove the guilt of the accused to an absolute certainty. It is sufficient that the State prove the guilt of the accused to your satisfaction and beyond a reasonable doubt.
At this point, I will charge you as to what constitutes a reasonable doubt. A reasonable doubt is not a mere possible doubt, it should be an actual doubt. It is such a doubt as a reasonable person could have. It is a sensible doubt such as one could give a reason for. It is sufficient to convict if from all of the proof in the case you honestly believe that the State has proved the accused to be guilty beyond a reasonable doubt.
The only proof or evidence you may consider is that evidence or proof presented in this trial. The evidence which you should consider consists of the testimony of the witnesses and of exhibits, such as writings and physical objects which the Court has permitted the parties to introduce. You must not consider any evidence which was not admitted, or to which an objection was sustained.
You are the exclusive judges of the facts. You find from the evidence what facts have been proved and what facts have not been proved. The jury alone determines the weight and credibility of the evidence. For this purpose, you determine the credibility of the witnesses, accordingly as you are impressed with his or her veracity.
You may take into account his or her manner on the stand, the probability or improbability of his or her statements, the interest or lack of interest he or she may have in the case, and every circumstance surrounding the giving of his or her testimony, which may aid you in weighing his or her statements.
If you believe that any witness in the case, either for the State or for the Defense, has willfully and deliberately testified falsely to any material fact, for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true, or reject as false, the testimony of any witness in whole or in part, accordingly as you are impressed with his or her veracity.
The charge as a whole meets the Victor standard. Read in context, it does not provide a reasonable likelihood that the jury applied the instructions unconstitutionally. Therefore, this assignment of error is without merit. See also State v. Smith, 637 So.2d 398 (La.1994).

ERRORS PATENT
The record does not reflect the defendant was given credit for time served.
La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The *441 record indicates the trial court did not do so. Thus, the defendant's sentence is amended to reflect that he is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882A. Resentencing is not required. However, this case is remanded and the district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992).
The record also indicates the trial court did not advise the defendant of the three (3) year limitation on post-conviction relief, provided for in La.Code Crim.P. art. 930.8.
La.Code Crim.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. The district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir. 1993).

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served and is also ordered to inform the defendant of the provisions of Article 930.8 by sending written notice to him within ten days of the rendition of this opinion and to file written proof thereof in the record of the proceedings.
AFFIRMED.
NOTES
[1] See, e.g., State v. Dickerson, 579 So.2d 472, 478, (La.App. 3d Cir.), modified on other grounds, 584 So.2d 1140 (1991), where this court held the defendant could not compel the state to conduct a fingerprint analysis of a cocaine bag.